UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TANYA DAIGLE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JAROSLAV P. STULC, *et al.*, )<br>)<br>    Defendants ) | Civ. No. 09-353-B-W |

**MEMORANDUM OF DECISION ON MOTION TO AMEND AND ORDER REQUIRING SUPPLEMENTAL BRIEFING**

Defendant Trover Clinic Foundation, Inc., a Kentucky medical corporation, has moved to dismiss the complaint brought against it by Tanya Daigle, a Maine resident. Trover Clinic Foundation is a former employer of Dr. Jaroslav Stulc, another of the named defendants, who was more recently employed as a physician and general surgeon by Redington-Fairview General Hospital in Maine. The gist of Daigle's complaint is that Redington-Fairview, her former employer, discriminated against her and unlawfully terminated her employment in retaliation for blowing the whistle about Dr. Stulc's sexual improprieties in the workplace. However, Daigle has expanded this suit to include claims against Trover Clinic Foundation, alleging that she would never have encountered Dr. Stulc in the workplace had Trover Clinic responded truthfully to an inquiry by the Maine Board of Licensure in Medicine about Dr. Stulc's fitness to serve as a physician. In its motion to dismiss, Trover Clinic argues that this Court lacks subject matter jurisdiction over the claims against it, that the Court cannot exercise jurisdiction over its "person," and that Maine is an inconvenient forum. Daigle's response to the motion was to file a motion to amend her complaint to allege a violation of the Healthcare Quality Improvement Act,

42 U.S.C. §§ 11101-11152, thereby, in theory, conferring federal subject matter jurisdiction. The Court has referred both Trover's motion to dismiss (Doc. No. 10) and Daigle's motion to amend (Doc. No. 14) for a report and recommended decision. The motion to amend is granted in part and denied in part. I will issue a recommended decision on the motion to dismiss following receipt of the supplemental briefing called for in this order.

## Discussion

Trover Clinic's motion to dismiss is brought pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(3), challenging subject matter jurisdiction, personal jurisdiction, and venue. (Def. Trover's Mot. to Dismiss, Doc. No. 10.) In opposition to the motion to dismiss, Daigle seeks to amend her complaint to add a claim under the federal Healthcare Quality Improvement Act and otherwise requests leave to conduct jurisdictional discovery. (Pl.'s Opposition Mem. at 1, 8-9, Doc. No. 15; see also Pl.'s Mot. to Amend, Doc. No. 14 (failing to attach draft amended complaint).) Trover Clinic replies that the motion to amend should be denied as futile. (Def. Trover's Obj. to Mot. to Amend, Doc. No. 17.) In further support of its jurisdictional challenges, Trover Clinic replies, among other things, that no jurisdictional discovery is warranted because none of the proposed discovery suggests any additional Maine forum contacts. (Def. Trover's Reply Mem. at 6-7.) For the reasons that follow, the motion to amend is denied, in part, as futile. I also order supplemental briefing on the issue of personal jurisdiction.

### A. *The motion to amend*

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party is allowed to amend a complaint as a matter of course and without leave of court if she files the amended complaint before being served with a responsive pleading, otherwise leave of court is required. Fed. R. Civ. P. 15(a)(1). In this instance, Daigle has properly sought leave of the Court because Trover

has already filed its answer (Doc. No. 6).  Pursuant to the Rule, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Among the grounds for denying leave is "futility."  If the proposed amendment would be futile, "'the district court acts within its discretion in denying the motion to amend.'" Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (quoting Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993)).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  Daigle's request is worded as follows:

> NOW COMES the Plaintiff, by and through undersigned counsel, and hereby moves, pursuant to Rule 15(a)(2), to amend her Complaint filed in the above-captioned matter so as to allege violations by Defendant Trover of the Healthcare Quality Assurance Act . . . .

(Pl.'s Mot. to Amend at 1.)  This request is somewhat ambiguous because Daigle does not clearly articulate whether she intends to add an additional claim arising under the HQIA or merely seeks to supplement her state law claims by alleging the breach of a duty imposed under the HQIA. Given the liberal nature of Rule 15, Daigle should be permitted to amend her complaint to include a new factual allegation that Trover Clinic violated the reporting requirements of the HQIA, but she should be denied leave to add a cause of action to her complaint that purports to arise under the HQIA.

The Healthcare Quality Improvement Act of 1986 (HQIA), 42 U.S.C. §§ 11101-11152, prescribes standards for professional review actions and imposes reporting obligations on health care entities and boards of medical examiners with respect to certain adverse actions taken against physicians in the context of professional review activities. Id. §§ 11112, 11132, 11133, 11134.  To encourage the required reporting activity, the HQIA extends immunity from liability in damages to professional review bodies, their members, staff and contracting agents, and others

3

who participate with or assist the body with respect to the action, so long as the professional review activities meet the standards prescribed by the Act and excepting claims arising under the Civil Rights Acts. Id. § 11111(a).[1] The HQIA also extends immunity from liability for reporting information to the agency designated to collect and preserve reports of adverse professional review activity[2], unless the falsity of the information was known to the person or entity in question. 42 U.S.C. § 11137(c). The sanction against health care entities for noncompliance is specifically prescribed and is limited to the loss of the immunity conferred under the Act. Id. § 11133(c). Although the loss of immunity under the Act might give rise to liability under another statute or under the common law, nowhere in the HQIA is there any reference to an independent, private right of action arising under the HQIA for individuals who allege harm in connection with a hospital or other health care entity's failure to comply with the HQIA's reporting requirements. For these reasons, in the event that the Court decides to exercise personal jurisdiction over Defendant Trover Clinic on Daigle's tort theories, leave is granted to Daigle to amend her complaint to add an allegation that Trover Clinic violated the HQIA, but not to add a separate count arising under the HQIA.

### B. *The motion to dismiss*

Trover filed its motion to dismiss roughly one month after filing its answer. (Doc. No. 6, 10.) Rule 12(b) provides that a motion seeking dismissal under subsections (b)(1) through (b)(7)

---

[1] To further encourage reporting, the HQIA authorizes the Secretary of Health and Human Services to investigate failures to report and to take action to revoke the immunity conferred under the Act to health care entities, "[i]f, after providing notice of noncompliance, an opportunity to correct the noncompliance, and an opportunity for a hearing, the Secretary determines that a health care entity has failed substantially to report information in accordance with section 11133(a)." Id. § 11111(b).

[2] The national agency in question is the National Practitioner Data Bank. 45 C.F.R. § 60.1. The HQIA imposes a duty on hospitals to request information from the Data Bank when a physician or practitioner applies to join its medical staff or for medical privileges and to request updates once every two years for physicians or practitioners who have joined its staff or who have been given medical privileges at the hospital. 42 U.S.C. § 11135. The factual allegations concerning the data bank would add nothing to the issue of Maine contacts for purpose of personal jurisdiction.

"must be made before pleading if a responsive pleading is allowed." Although it is permissible to file a motion to dismiss in tandem with an answer, see, e.g., McCarty v. Inhabitants of Kennebunkport, 366 F. Supp. 2d 165, 166 n.2 (D. Me. 2005), the sequencing of Trover's filings runs up against the temporal restrictions articulated in the Rule. Rule 12(h) recognizes that defenses numbered (2) through (5), including lack of personal jurisdiction and improper venue, may be waived by conduct. Manchester Knitted Fashion, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 691-92 (1st Cir. 1992). However, when the defense in question has been asserted in the defendant's "first defensive move," a waiver should not be found. Id. A review of Trover's answer reflects that the defenses in question were preserved. As for the timeliness of the motion or the proper procedural vehicle for requesting a hearing on the defenses in question, Daigle has not objected that the pending motion to dismiss is untimely or otherwise improper. Moreover, this District has permitted late-filed motions to dismiss raising Rule 12(b) grounds, so long as those grounds have been preserved in the defendant's answer. Ecotecture, Inc. v. Wenz, No. 99-387-P-C, 2000 U.S. Dist. LEXIS 18482, *2-4, 2000 WL 760961, *1 (D. Me. May 16, 2000) (Cohen, Mag. J., Rec. Dec.) (collecting cases and citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1361 at 445-46 (2d ed. 1990) ("courts have allowed untimely motions if the defense has been previously included in the answer.")).[3]

Among the challenges raised by Trover Clinic in its motion to dismiss is a contention that this Court lacks jurisdiction of Trover Clinic's person. (Def. Trover's Mot. to Dismiss at 8-17.) With the exception of requesting jurisdictional discovery, Daigle fails utterly to brief the existence of *in personam* jurisdiction. It is Daigle's burden to persuade the Court that *in*

---

[3] The defense of lack of subject matter jurisdiction is treated differently. Pursuant to Rule 12(h)(3): "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

*personam* jurisdiction exists over the out-of-state defendant. <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 50 (1st Cir. 2002). An out-of-state defendant's amenability to suit in a forum can be based on general contacts demonstrating "continuous and systematic" activity within the forum ("general jurisdiction") or on a more specific set of in-forum contacts that give rise to the plaintiff's claim ("specific jurisdiction"). <u>Astro-Med, Inc. v. Nihon Kohden Am., Inc.</u>, ___ F.3d ___, 2009 U.S. App. LEXIS 23298, *11, 2009 WL 3384786, *4 (1st Cir. Oct. 22, 2009); <u>Platten v. HG Berm. Exempted Ltd.</u>, 437 F.3d 118, 135 (1st Cir. 2006); <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 57 (1st Cir. 2005). Daigle fails to brief the personal jurisdiction issue in these terms. Instead, she seeks to amend her complaint to include a new allegation involving violation of the HQIA. While it is all well and good to request jurisdictional discovery, Daigle must also brief the personal jurisdiction issue with the evidence currently available to her. Daigle is hereby ordered to submit a memorandum of law on the personal jurisdiction question by December 8, 2009.

As for jurisdictional discovery, the First Circuit has stated "that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 625 (1st Cir. 2001) (quoting, with emphasis, <u>Sunview Condominium Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962, 964 (1st Cir. 1997)). A plaintiff must have been diligent in preserving her right to jurisdictional discovery. This includes "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." <u>Id.</u> at 626. The degree of discretion that the Court has is significant.

> The standard for reversing a district court's decision to disallow jurisdictional discovery is high. Given the trial court's broad discretion in

> determining whether to grant jurisdictional discovery, "[a] ruling will be overturned only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was *plainly wrong* and resulted in substantial prejudice to the aggrieved party." Crocker [v. Hilton Int'l Barb., Ltd.], 976 F.2d [797,] 801 [(1st Cir. 1992)] (internal quotation marks omitted) (emphasis added); see also Noonan [v. Winston Co.], 135 F.3d [85,] 94 [(1st Cir. 1998)].

Id. at 626. The Court should not postpone determination of the personal jurisdiction question to permit the proposed jurisdictional discovery because Daigle proposes to discover, exclusively, activity within the State of Kentucky, not activity within the State of Maine.[4] Such discovery is not reasonably designed to uncover Maine forum contacts.

Without presenting a discovery proposal worthy of an order forestalling determination of Trover's motion, Daigle is left with the isolated forum contact described in Ms. Plummer's affidavit. That isolated forum contact consists of Trover's letter to the Maine Board of Licensure, sent in response to a request from the Board for information. Given this limited evidence, Daigle has clearly failed to develop a record that would justify an exercise of "general jurisdiction" based on continuous and systematic forum contacts. There simply are no such contacts described in any of Daigle's papers. As for specific jurisdiction, Daigle is expected to demonstrate three things: (1) "relatedness," meaning that her claims arise from, or are related to, Trover's contacts with the Maine forum, which involves a claim-specific inquiry; (2) "purposeful availment," meaning conduct evincing an intentional invocation of the benefits and privileges of Maine law and making it foreseeable that Trover could be subjected to litigation in the Maine forum; and (3) reasonableness, as measured by a collection of "gestalt factors." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25-26 (1st Cir. 2005). The five customary factors are (1) the defendant's burden of appearing, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial

---

[4] As a practice pointer, Daigle's counsel should have sought leave to conduct jurisdictional discovery by motion.

7

system's interest in obtaining the most efficient resolution of the controversy, and (5) the shared interest of the several States in furthering fundamental substantive social policies.  Id. at 26.  All of the specific jurisdiction requirements "must be satisfied, but a strong showing on reasonableness can 'fortify a more marginal showing of relatedness and purposefulness.'"  Reed & Reed, Inc. v. George R. Cairns & Sons, Inc., 519 F. Supp. 2d 148, 153 (D. Me. 2007) (quoting Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 717 (1st Cir. 1996)).  I am currently at a loss as to Trover's relatedness and purposeful availment arguments.

A review of Daigle's memorandum in opposition to the motion to dismiss will not turn up any reference to any of the standards involved in the specific jurisdiction analysis.  Indeed, the Court could treat the personal jurisdiction challenge as conceded for failure to brief the matter.  Cf. Paquin v. MBNA Mktg. Sys., 233 F. Supp. 2d 58, 69 (D. Me. 2002) (granting summary judgment against a claim due to plaintiff's failure to brief it in opposition to defendant's motion); see also cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  It is not the task of the Court or the defendant to explain why personal jurisdiction exists over Trover Clinic.  Nevertheless, because dismissal for lack of personal jurisdiction is ordinarily without prejudice, and because the Court has referred the matter for recommendation, I intend to make a recommendation on the merits of the personal jurisdiction question.

## Conclusion

Daigle's motion to amend is DENIED IN PART and GRANTED IN PART as outlined in Part A of the foregoing discussion.  Daigle is hereby ORDERED to brief the existence of specific personal jurisdiction over Trover Clinic in a *claim-specific* fashion, addressing the due process standards outlined above.  In the course of doing so, Daigle will outline the elements of

her several tort theories and explain their relationship to Trover Clinic's Maine forum contact.

Daigle is FURTHER ORDERED to file her supplemental briefing <u>and</u> her amended complaint

by December 8, 2009. Trover Clinic will have 7 days to respond. No reply is permitted.

## CERTIFICATE

This report fairly reflects the actions taken at the hearing and shall be filed forthwith. Any objections to this report shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

November 24, 2009 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge