UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TANYA DAIGLE, )<br>   )<br>      Plaintiff, )<br>   )<br>   v. )<br>   )<br>JAROSLAV P. STULC, *et al.*, )<br>   )<br>      Defendants )  | 09-CV-353-B-W |

**RECOMMENDED DECISION ON DEFENDANT
TROVER CLINIC FOUNDATION'S
MOTION TO DISMISS**

The plaintiff in this action, Tanya Daigle, is a resident of Cornville, Maine, and former employee of Defendant Redington-Fairview General Hospital, a health care facility situated in Skowhegan. Ms. Daigle is pursuing a civil action against her former employer under both federal and state law, alleging a hostile work environment, discrimination based on sex, and retaliation against Ms. Daigle for her efforts to obtain relief from Redington-Fairview in connection with the workplace conduct of Defendant Jaroslav Stulc,[1] a physician who worked at Redington-Fairview for a period of time in 2007 and 2008. Although the civil action between Ms. Daigle and Redington-Fairview is between two residents of Maine, the federal claims afford a basis for this Court to exercise subject matter jurisdiction, at least as to the dispute between these two parties. Now pending is a motion to dismiss by a third defendant, Trover Clinic Foundation, Inc., a Kentucky-based entity that owns and/or operates certain healthcare facilities in Kentucky. Ms. Daigle has included claims against Trover Clinic in this action because she

---

[1]   Ms. Daigle's complaint extends these claims to Defendant Stulc as well. Stulc has filed a suggestion of bankruptcy in this action (Doc. No. 27) and it does not appear from the docket that Ms. Daigle has yet served him with process. (See Pl. Daigle's Response to Order to Show Cause, Doc. No. 26.)

maintains that she would never have had occasion to work alongside Jaroslav Stulc but for the fact that Trover Clinic, a former employer of Stulc, failed to disclosed certain improprieties to the National Practitioner Data Bank and gave a less than full disclosure to the Maine State Board of Licensure in Medicine, whose licensure of Stulc to practice medicine in Maine was essential to his ability to work at Redington-Fairview. Trover Clinic argues that the claims against it must be dismissed because the Court lacks subject matter jurisdiction over these claims and because the Court lacks jurisdiction over the person of Trover Clinic. Alternatively, Trover requests a change of venue to Kentucky. (Def. Trover Clinic's Mot. to Dismiss, Doc. No. 10.)

The Court referred Trover Clinic's motion for report and recommendation pursuant to 28 U.S.C. § 636. For the reasons that follow, I conclude that the Court has discretion to exercise pendant party jurisdiction over the claims against Trover, so that the subject matter jurisdiction argument does not necessarily mandate dismissal. However, Ms. Daigle has failed to assert a valid basis for subject matter jurisdiction in her memoranda and therefore has waived the issue. I am also of the opinion that Ms. Daigle fails to establish the existence of *in personam* jurisdiction over Trover Clinic based on the contacts and tort theories at issue in this case. Accordingly, it is my recommendation that the Court grant Trover Clinic's motion to dismiss based on both the subject matter jurisdiction and personal jurisdiction challenges.

A.  STANDARD OF REVIEW

Trover Clinic's motion to dismiss arises under Rule 12 of the Federal Rules of Civil Procedure, subparts (b)(1) through (b)(3). With respect to the jurisdictional challenges it is Ms. Daigle's burden to demonstrate an adequate basis for the Court to assume jurisdiction over both the claims at issue and the defendant in question. United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 54 (1st Cir. 2009) (subject matter jurisdiction); Adelson v. Hananel,

510 F.3d 43, 48 (1st Cir. 2007) (personal jurisdiction). Trover Clinic does not contest Ms. Daigle's allegations or evidentiary submissions with respect to its domicile or its contacts with Maine. Consequently, the Court should take it as established that Trover Clinic has diverse citizenship from Ms. Daigle and that it has engaged in the forum contacts set forth in the following brief statement of the jurisdictional facts.

B.  BACKGROUND

   1.  *Jurisdictional facts*

Ms. Daigle has secured an affidavit from Vickie Plummer, Initial Licensure Specialist for the Maine Board of Licensure in Medicine, who wrote to Trover Clinic to inquire about Dr. Stulc's fitness to practice medicine, following receipt by the Board of an application from Dr. Stulc to practice medicine in Maine. Ms. Plummer's letter of inquiry was in the following form:

> The Physician named above has applied for licensure to practice medicine in the State of Maine and has indicated affiliation with your institution during the period shown.
>
> Would you please verify this information and provide us with your comments concerning this physician's professional ethics, character, and clinical competence. This information needs to be on your original letterhead.
>
> As this doctor's license in Maine is contingent upon a response from your institution, a prompt reply would be appreciated.
>
> Sincerely, Vickie Plummer, Initial Licensure Specialist

(Plummer Aff. ¶ 3, Doc. No. 15-1.) In response to this inquiry, Mark Browne, MD, Vice President of Medical Affairs of the Trover Health System, responded by letter dated July 20, 2007, as follows:

3

> Dear Ms. Plummer:
>
> The records of Trover Health System reflect that Dr. Stulc was placed on a work improvement plan. An investigation into his conduct was completed. No final adverse action was taken against Dr. Stulc's privileges. After the completion of this investigation, Dr. Stulc voluntarily resigned from the medical staff with privileges in good standing.
>
> Sincerely, Mark Browne, MD
> Vice President of Medical Affairs

(Id. ¶ 5.) Ms. Plummer reports that she also checked the records maintained by the National Practitioner's Data Bank to determine whether Trover Clinic had reported any adverse action against Dr. Stulc. She found that Trover Clinic had not. (Id. ¶ 6.)

Additional unauthenticated documents are attached to Ms. Daigle's supplemental briefing (Doc. No. 24). In particular, Ms. Daigle has filed a non-certified copy of the June 9, 2009, Decision and Order of the Maine State Board of Licensure in Medicine, *In re: Jaroslav P. Stulc, M.D.*, CR-08-030 & CR-08-052, in which the Board revoked Dr. Stulc's license to practice in Maine on findings that he was dishonest in his license application when he failed to disclose the past suspension, restriction or limitation of his medical privileges during his tenure with Trover Clinic in Kentucky and that he was dishonest over the course of proceedings before the Board. (Doc. No. 24-2.)

    *2.    Related Factual Allegations*

According to Ms. Daigle's allegations, during Dr. Stulc's tenure at Trover Clinic in Kentucky he was placed on probationary and suspended status through much of 2006 and 2007 with respect to his medical privileges at Trover-managed facilities based on accusations and findings related to sexual harassment and other unprofessional conduct, including inappropriate, rude or offensive communications. (See Am. Compl. ¶¶ 6-29.) The circumstances underlying

4

these allegations are recounted to a more limited extent in the uncertified copy of the Board's Decision and Order.  (Board of Licensure Decision and Order, Findings of Fact ¶¶ 8-11, Doc. No. 24-2.)  Ms. Daigle brings her claims against Trover Clinic based on Trover Clinic's representation to the Board of Licensure that Dr. Stulc's medical privileges "were in good standing" at the time of Dr. Stulc's voluntary resignation.  Specifically, she brings fraud and negligence claims against Trover Clinic based on the following factual allegations:

> 25.  In 2006 and 2007, the Vice President of Medical Affairs, as well as the entire Medical Executive Committee of the Regional Medical Center of the Trover Health System and Defendant Trover well knew that Defendant Stulc's privileges had been suspended, and that therefore his privileges were not in good standing.
>
> 26.  On and after March 23, 2007, Defendant Trover, including, but not limited to, its Medical Executive Committee, was well aware that Dr. Stulc had been enabled by the medical privileges afforded to Dr. Stulc by Defendant Trover to engage in inappropriate sexual conduct with patients for whose care Defendant Trover was responsible, and in inappropriate conduct towards female staff members.
>
> 27.  Through the aforesaid credible and documented evidence, and psychological records of Defendant Stulc that Defendant Trover was thus charged to review, Defendant Trover knew of Dr. Stulc's inappropriate sexual proclivities and perversions perpetrated against female staff members and patients; that he had been suspended; and that his privileges were not in good standing.
>
> 28.  At a point in time when Defendant Trover well knew that Defendant Stulc's privileges had been suspended and were not in good standing, Defendant Trover agreed with Defendant Stulc to represent to unsuspecting third parties that Defendant Stulc's privileges had not been suspended and that therefore his privileges were in good standing.
>
> 29.  The intent of Defendant Stulc and Defendant Trover in fraudulently concealing the truth about Defendant Stulc's inappropriate sexual proclivities and perversions was to cause third parties to rely on this falsehood, despite Defendant Trover's knowledge of Dr. Stulc's demonstrated sexual proclivities, sexual perversities and abuses of his license to practice medicine upon women.

(Am. Compl ¶¶ 25-29.)  Based on these factual allegations, Ms. Daigle asserts that Trover Clinic is liable to her because she had the misfortune of working with Dr. Stulc at Redington-Fairview

and would not have been involved in any related whistleblower activities or experienced any alleged retaliation or harassment from Dr. Stulc or Redington-Fairview, but for Trover Clinic's failure to air Dr. Stulc's dirty laundry. The theories she advances in her amended complaint are fraudulent concealment and negligence. (Id., Counts I & II.)

With respect to her harm, Ms. Daigle alleges that she had to endure the foreseeable injury associated with bearing witness to Dr. Stulc's inappropriate conduct with the female patients and staff of Redington-Fairview, including alleged incidents involving observation of "hard core pornography" prior to treating female patients, inappropriate sexual comments to and physical contact with patients, and with the stress of worrying about what he might do to female patients. (Id. ¶¶ 69, 71, 81, 82, 93, 95-97, 103, 108, 109.)

In support of her theory that Trover Clinic has breached a tort-law duty owed to her, personally, Ms. Daigle alleges that Trover Clinic's conduct has violated obligations imposed on it by Congress in the Healthcare Quality Improvement Act of 1986 (HQIA), 42 U.S.C. §§ 11101-11152, by failing to report adverse action levied against Dr. Stulc to the National Practitioners Data Bank. (Id. ¶¶ 53, 66, 74, 158.) Violation of this statutory duty is alleged as another cause of Ms. Daigle's harm, though the alleged failure to send notification to the Data Bank does not amount to a forum contact with Maine.

### 3. *Jurisdictional Discovery*

In her initial opposition to Trover Clinic's motion to dismiss, Ms. Daigle requested an opportunity to conduct jurisdictional discovery. However, all of her proposed discovery was aimed at discovering more details about what Trover Clinic knew in relation to Dr. Stulc's inappropriate conduct while he enjoyed medical privileges at Trover Clinic facilities. I denied this request for discovery because it was not directed at uncovering any forum contacts with the

State of Maine. (Mem. of Decision on Mot. to Amend and Order Requiring Supplemental Briefing at 6-7, Doc. No. 20.) For instance, at no time has Ms. Daigle requested an opportunity to discover whether Trover Clinic directed any additional communications toward Redington-Fairview General Hospital concerning Dr. Stulc. Nor has Ms. Daigle introduced into evidence any such correspondence between Trover Clinic and Redington-Fairview. If she has knowledge of such correspondence, presumably she has concluded that her claims against Trover Clinic do not arise out of such forum contacts.

## C.  DISCUSSION

According to Trover Clinic, this Court lacks subject matter jurisdiction over the claims against it because those claims "are purely and entirely state common law claims" (Def. Trover Clinic's Mot. to Dismiss at 4, Doc. No. 10) and because the inclusion of Redington-Fairview as a defendant means there is not complete diversity between the parties (id. at 6-9). Additionally, Trover Clinic maintains that its solitary letter to the Board of Licensure is not sufficient to support an exercise of jurisdiction over its person. (Id. at 9-17.) I begin with subject matter jurisdiction.

### 1. *Subject matter jurisdiction*

Ms. Daigle does not dispute the contention that her claims against Trover Clinic do not involve a federal cause of action.[2] Instead, she essentially contends in her initial memorandum (Doc. No. 15 at 1, 8-9) that federal question jurisdiction arises because she has alleged a violation of the Healthcare Quality Improvement Act (HQIA), a federal statute that does not give

---

[2] By appearances, the amended complaint includes Trover Clinic as a defendant on Count IV, a hostile work environment claim asserted under both Maine law and Title VII. (Am. Compl. ¶ 183; but see id. ¶ 186 (referencing a single defendant).) Presumably, Daigle recognizes that she was never Trover Clinic's employee and that there is no good faith basis for her to assert a Title VII employment claim against Trover Clinic. This theoretical basis for federal question jurisdiction over the claims against Trover is entirely illusory.

private individuals a cause of action, as discussed in my prior Memorandum of Decision (Doc. No. 20 at 3-4). In her supplemental memorandum of law, Ms. Daigle does not return to the subject matter jurisdiction issue. However, in the jurisdictional recitation of her amended complaint, Ms. Daigle has newly alleged that federal question jurisdiction exists over Trover Clinic by dint of 42 U.S.C. § 11101-11152, which is a reference to the HQIA. For reasons that follow, Ms. Daigle has failed to articulate a valid basis for this Court's exercise of subject matter jurisdiction over her claims against Trover Clinic. Because she has failed in this regard, I recommend that the Court grant the motion to dismiss. Ms. Daigle's amended complaint fails to contain on its face a basis for subject matter jurisdiction and she has not articulated a valid basis in opposition to the motion. There is a potential basis for exercising jurisdiction over the subject matter at issue, but Ms. Daigle has failed to identify it in her complaint and has failed to articulate it in opposition to Trover Clinic's motion. In the first instance there is a facial insufficiency in the complaint. Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). Although the Court is certainly free to review the entirety of the amended complaint to identify a basis for subject matter jurisdiction, "even though the jurisdiction expressly asserted was improper," Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (quoting Commonwealth of Mass. v. United States Veterans Admin., 541 F.2d 119, 112 (1st Cir. 1976)), it need not do so and may put Ms. Daigle to the burden of bringing a separate action to vindicate the novel tort theory she advances against Trover Clinic. In the second instance, there is a failure to brief an adequate basis for subject matter jurisdiction in opposition to the motion, which amounts to a waiver.

     For reasons already explained in my prior Memorandum of Decision, there is no such thing as a private cause of action arising under the HQIA, so this asserted basis for exercising

federal question jurisdiction does not exist.  In the absence of a federal question, jurisdiction might be based on diversity of citizenship.  However, Trover Clinic is correct on the "abecedarian" point that subject matter jurisdiction cannot be based on diversity of citizenship in the current action due to a lack of complete diversity.  American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004) ("We begin with the abecedarian rule that there must be complete diversity among the parties to sustain diversity jurisdiction.").

Notwithstanding the foregoing, there is another layer to this onion.  Because the complaint includes federal claims against a co-defendant this Court has discretion to hear the state law claims against Trover Clinic if they form part of the same case or controversy.  "Pendent party jurisdiction," although a "more radical form" of supplemental jurisdiction, has been authorized by Congress since the passage of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.  See Erwin Chemerinsky, Federal Jurisdiction § 5.4 (5th ed. 2007).  Trover Clinic's motion makes no mention of pendent party jurisdiction, but Trover Clinic correctly observes that the Court should not retain the state law claims against it based on supplemental jurisdiction if those claims are not part of the same case or controversy or if they raise novel state law questions that substantially predominate over the federal questions.  28 U.S.C. § 1367(a), (c).  This is where waiver takes hold.  Ms. Daigle fails to brief the issue.

Trover Clinic makes two valid points that weigh against an exercise of supplemental jurisdiction:  (1) the factual underpinnings of the claims against it concern communications made outside the scope of Ms. Daigle's employment relationship with Redington-Fairview and (2) Daigle complains of harm or danger to third parties as much as to herself.  (Def. Trover Clinic's

9

Mot. at 8[3]). Nevertheless, there is some overlap between Ms. Daigle's claims against Trover Clinic and the other defendants insofar as she alleges that Trover Clinic shares responsibility for the same alleged harm. Still, Ms. Daigle is advancing fraud and negligence theories premised on a potentially novel concept of tort duty, which is dissimilar from the employment case she has against Redington-Fairview. Although it would not likely be an abuse of discretion to exercise pendent party jurisdiction over these claims, nor would it seem an abuse of discretion to decline to do so under the circumstances given the shortcomings in Ms. Daigle's jurisdictional allegations and her failure to brief the issue. I recommend that the Court grant the motion to dismiss on this basis.[4]

## 2. In personam *jurisdiction*

In my prior Memorandum of Decision I afforded Ms. Daigle a second opportunity to address the issue of personal jurisdiction. I also concluded that her presentation would necessarily be limited to specific jurisdiction, as her presentation at that time in no way suggested an effort to establish general and pervasive forum contacts that would justify an exercise of "general jurisdiction" over Trover Clinic. (Mem. of Decision on Mot. to Amend and Order Requiring Supplemental Briefing at 7.) Ms. Daigle has not challenged that conclusion and has limited her presentation to the specific jurisdiction tests. Because Ms. Daigle has not

---

[3] Trover Clinic views Daigle as "trying to somehow assert a class action" because of the way she complains of harm to third parties. (Trover's Mot. at 8.) The complaint obviously does not include any class allegations, but it does appear that Daigle may be assuming the mantle of private attorney general in some respects.

[4] Ms. Daigle might refile and assert her claims against Trover Clinic on the basis of diversity, but severing the claims out of this case will not materially affect proceedings with respect to Redington-Fairview and a piecemeal approach makes sense given that the claims against Redington-Fairview would proceed to judgment first. If Redington-Fairview were to obtain judgment in its favor against the employment claims, it might well undermine Ms. Daigle's theory that she can hold Trover Clinic liable for Dr. Stulc's or Redington-Fairview's conduct in the workplace.

requested a hearing, the Court may address the motion under the *prima facie* standard, which it recently described in the following terms:

> Under the *prima facie* standard, the Court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). To satisfy this standard, "the plaintiff must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." Id. (internal quotation omitted). The plaintiff's showing "must be based on evidence of specific facts set forth in the record." Id. The plaintiff "may not rely on unsupported allegations in their pleadings," but must instead make affirmative proof. Id. In assessing the plaintiff's showing, the Court does not act as a factfinder. Id. Rather, "[i]t accepts properly supported proffers of evidence by a plaintiff as true," id., and construes these facts "in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. ABA, 142 F.3d 26, 34 (1st Cir. 1998). The Court then "add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id.

B.J. Tidwell Indus. v. Zawacki, 645 F. Supp. 2d 7, 10 (D. Me. 2009).

In opposition to the motion, Ms. Daigle has introduced evidence that the Maine Board of Licensure requested from Trover Clinic, in 2007, verification of Dr. Stulc's past employment and "comments concerning the Physician's professional ethics, character and clinical competence," noting that Dr. Stulc's application for licensure to practice medicine in Maine was "contingent upon a response from your institution." (Plummer Aff. ¶ 3, Doc. No. 15-2.) Trover Clinic's response to this inquiry was to the effect that (1) Dr. Stulc "was placed on a work improvement plan"; (2) Trover Clinic had conducted "an investigation into his conduct"; and (3) that "[n]o final adverse action was taken against Dr. Stulc's privileges." The letter also indicated that "[a]fter the completion of this investigation, Dr. Stulc voluntarily resigned from the medical staff with privileges in good standing." (Id. ¶ 5.) Although there were certainly red flags in this communication, the letter was not entirely forthcoming.

Trover Clinic's letter to the Board of Licensure is, obviously, a forum contact. But does this solitary contact justify haling Trover Clinic into court in Maine, on the claims presented by Ms. Daigle, when Trover Clinic has not attempted to set up any relationship with her and when her theories of liability could only exist in light of the intervening acts of Redington-Fairview and Dr. Stulc? I conclude that the relationship between this forum contact and Ms. Daigle's claims is too attenuated by virtue of the fact that her theory depends entirely on the unilateral intervening conduct of other parties, making her presentation on relatedness and purposeful availment equivocal at best. Because the gestalt factors also do not persuasively favor Ms. Daigle, I conclude that an exercise of personal jurisdiction over Trover Clinic would not comport with notions of fair play and substantial justice.

    *a. Relatedness*

The relatedness inquiry is a relaxed and flexible standard that asks whether the claim in question directly arises out of, or relates to, the defendant's forum contacts. Astro-Med, Inc. v. Nihon Kohden Am., Inc., ___ F.3d ___, 2009 U.S. App. Lexis 23298, *13, 2009 WL 3384786, *5 (1st Cir. 2009). For a tort claim, that inquiry involves consideration of "whether the plaintiff has established cause in fact (*i.e.*, the injury would not have occurred but for the defendant's forum-state activity) and legal cause (*i.e.*, the defendant's in-state conduct gave birth to the cause of action)." Mass. Sch. of Law v. Am. Bar Assoc., 142 F.3d 26, 35 (1st Cir. 1998). See also Hannon v. Beard, 524 F.3d 275, 282 (1st Cir. 2008). In the context of this case, Ms. Daigle's allegations do implicate "cause in fact" (as in "but for" causation) in respect to the relatedness of Trover Clinic's letter to the Board of Licensure,[5] but they do not involve legal cause because Ms.

---

[5]     As is discussed in the context of the gestalt reasonableness factors, "but for" causation may even be called into question insofar as Trover Clinic's letter to the Board raises some cause for concern. However, I have

Daigle's claims depend entirely on the intervening conduct of independent actors who cannot fairly be regarded as Trover Clinic's agents.  Had Dr. Stulc comported himself with appropriate professional behavior, or had Redington-Fairview responded other than as alleged, then Trover Clinic's letter to the Board could not have been actionable.  As Ms. Daigle notes, the Maine Long Arm Statute extends to "[d]oing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State." 14 M.R.S. § 704-A(2)(B).  Until the harm alleged by Ms. Daigle had come to pass, no tort action had accrued in her behalf, even if Trover Clinic's letter could be regarded as a breach of a duty owed to the Board of Licensure or the public it aims to protect.  In order for Ms. Daigle's tort claims to be "born," as a legal matter, it was necessary for Dr. Stulc and Redington-Fairview to breach independent legal duties that Trover Clinic could not itself breach because it had no supervisory authority over Dr. Stulc or Redington-Fairview.

      b. *Purposeful availment*

The purposeful availment standard tests whether the defendant's forum contacts demonstrate an effort to take advantage of the privilege of conducting activities in the forum state, by invoking the benefits and protections of that state's laws, making it foreseeable that the defendant might have occasion to come before the state's courts.  Hannon, 524 F.3d at 284.  The "cornerstones" of this standard are voluntariness and foreseeability.  Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995).  As for voluntariness, it is true that Trover Clinic did not have to send its letter to the Board of Licensure and, therefore, acted voluntarily.  However, Ms. Daigle's presentation fails to depict an in-forum act by Trover Clinic that amounted to a voluntary effort

---

acknowledged the existence of "but for" causation in recognition of the fact that the relatedness concept is supposed to be a "relaxed" standard.

to avail itself of the benefits and protections of Maine law. As for foreseeability, Trover Clinic may have foreseen a potential for litigation in Maine had its letter included content that Dr. Stulc might allege was defamatory (assuming Dr. Stulc was then a resident of Maine), but foreseeing a potential lawsuit by someone in Ms. Daigle's position is another matter.[6] A claim-specific analysis of foreseeability suffers from the same legal problems associated with the relatedness inquiry. Trover Clinic could not foresee that its letter to the Board would be the "legal cause" of some future injury to unknown individuals, even if the information omitted from its letter could be considered as having a "but for" relationship with every future act performed by Dr. Stulc in connection with his license to practice medicine in Maine.[7]

### c. Gestalt factors

The five customary gestalt factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies.

United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (citing Burger King v. Rudzewicz, 471 U.S. 462, 477 (1985)). With respect to the gestalt factors, Trover Clinic potentially bears the burden of showing the unreasonableness of exercising jurisdiction, but only assuming that Ms. Daigle has succeeded in demonstrating relatedness and purposeful availment. Harlow v. Children's Hosp., 432 F.3d 50, 67 (1st Cir.

---

[6] Trover Clinic's conduct might better be described as "purposeful avoidance" than "purposeful availment."

[7] Trover Clinic's alleged failure to disclose to the National Practitioner Data Bank the discipline it imposed in relation to Dr. Stulc's medical privileges should not be condoned. Presumably, the Kentucky authorities or the Secretary of Health and Human Services will have an interest in investigating these matters to ensure compliance with federal law and any applicable Kentucky law. Nevertheless, however inappropriate this alleged conduct was, the failure to route a report to the Data Bank did not amount to a Maine forum contact. To hold otherwise would expose a healthcare provider to the jurisdiction of every state in the Nation depending on the movement of the physicians presently or formerly enjoying medical privileges within its facilities.

2005).  "[I]n certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness."  Ticketmaster-New York v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994).  On the other hand, Ms. Daigle herself might overcome a marginal showing on relatedness and purposeful availment, if her presentation concerning reasonableness is particularly powerful.  Nowak v. Tak How Invs., 94 F.3d 708, 717 (1st Cir. 1996).

Trover Clinic argues that its burden of appearing in Maine weighs strongly against an exercise of jurisdiction and argues that Kentucky actually has a more significant interest in adjudicating this dispute, whether in terms of the parties to this litigation or in terms of the broader social interest.  (Def. Trover Clinic's Response to Pl.'s Supplemental Mem. at 9-10, Doc. No. 29.)  On balance, I agree with Trover Clinic that the gestalt factors do not militate in favor of Ms. Daigle's assertion that this Court has jurisdiction of the person of Trover Clinic.  Before running through the applicable factors, there is a recent decision from the District of California that deserves mention.

In a case involving a somewhat similar scenario, where a physician sued a Maine healthcare organization in California for negative statements the organization made about the physician to his California employer, the District Court for the Eastern District of California ruled that an exercise of personal jurisdiction over the Maine organization would not be reasonable.  Awan v. Aroostook Med. Ctr., No. 2:09-cv-01724-MCE-DAD, 2009 U.S. Dist. Lexis 96758 (E.D. Cal. Oct. 20, 2009).  Like Maine, California has a long-arm statute that is coextensive with the limits established under the Due Process Clause of the Constitution.  Id., Lexis *8.  The Court analyzed the case under the Calder-effects doctrine, something that Ms. Daigle has not raised.  Id., Lexis *20-21.  It recognized that the Maine healthcare organization engaged in an intentional act that was expressly aimed at California, and that the plaintiff

15

physician experienced the brunt of his harm in California, which meant that relatedness and purposeful availment were met.[8] However, it nevertheless dismissed the claims against the physician's former Maine employer because (1) the extent of purposeful interjection into California was "slight or minimal," arising only because of a request for information originating in California; (2) the burden of appearing in California in terms of the disruption of the defendant's business operations was great (multiple personnel all traveling to California during the same period of time to attend trial); (3) an adjudication in California "would interfere with the capacity of Maine courts to resolve disputes involving post-employment references"; (4) California had a diminished interest in entertaining a lawsuit against a defendant who would have qualified immunity in relation to its statements concerning a physician's character and fitness and encouraging such lawsuits would tend to discourage candid evaluations; (5) enforcement of any judgment would take place in the other forum; and (6) the other forum would afford similar relief. Id., Lexis *28-34.

    Awan is not on all fours with this case, which tends in some ways to improve the gestalt evaluation for Ms. Daigle, though the differences also tend to weaken the relatedness and purposeful availment evaluations, in ways already discussed. In the end, my view is that the outcome should be the same and that personal jurisdiction should not be exercised on the mere basis of a job evaluation or recommendation solicited by an in-forum employer or agency, whether that evaluation disfavors or favors the applicant, as in either case it will be alleged by some party that the representations are false or misleading. I also conclude that the gestalt factors particularly favor Trover Clinic in this case because the representations it made to the

---

[8]     The plaintiff physician in Awan was in the position of Dr. Stulc rather than Ms. Daigle. I have expressed the view that this difference undermines the relatedness inquiry in terms of "legal cause," but the distinction is, admittedly, subtle.

16

Maine Board (that Dr. Stulc was placed on a work improvement plan, that an investigation into his conduct was conducted, that no *final* adverse action was taken, but that Dr. Stulc voluntarily resigned at the completion of the investigation) was not the kind of misrepresentation that would impel a Maine court to seek the vindication of a State interest through this litigation, especially in light of the attenuated nature of Ms. Daigle's theory of legal causation and her failure to brief the proposed duty of care in terms of Maine tort law precedent.

### i. burden of appearing

Undoubtedly the burden of appearing is substantial for an out-of-state organization that is called upon to address the particulars of a past employment relationship with a former member of its staff and the efforts it took to regulate or discipline the employee's conduct and to negotiate a mutually acceptable means of parting company. The likelihood is that Trover Clinic would have multiple members of its staff attending a trial in Maine (assuming the tort theory is actionable) over a period of days.

### ii. Maine's interest in adjudicating the dispute

Maine has an interest in adjudicating this dispute because it has a right to be concerned about the quality of responses that are directed to its Board of Licensure in Medicine with respect to a physician's fitness and qualifications. As the allegations in this case reflect, the licensure of unfit physicians can be expected to result in harm to members of the public (as in "but for" causation). Maine also has an interest in providing recourse to a citizen such as Ms. Daigle for harms directly caused by an out-of-state entity. However, in this case the content of the letter that is asserted as the basis for Ms. Daigle's claims against Trover Clinic was facially sufficient to put the recipient on notice of the possibility that Dr. Stulc's conduct at Trover Clinic was problematic enough for him to discontinue his affiliation with Trover Clinic. Though the

disclosure may not have been complete, the sovereign interest of Maine should not be so affronted that a Maine court would feel impelled to hale Trover Clinic in from Kentucky in search of vindication for Ms. Daigle's alleged harm.  Additionally, in terms of reciprocity, it is not at all clear that Maine would wish for Maine-based employers to be subject to litigation in other jurisdictions based exclusively on a letter of recommendation or similar evaluation that, while sufficient to raise red flags about an individual's past performance, was not quite so frank as to invite a tortious interference or defamation claim by the former employee.  Maine's interest might be served to a degree by insisting on local justice in this kind of scenario, but it is correspondingly diminished if other states take a similarly hawkish approach to the matter with respect to Maine-based employers.

iii.     Ms. Daigle's interest in convenient and effective relief

Without a doubt, this factor favors Ms. Daigle.  Bringing a case like this in another jurisdiction presents a potentially insurmountable obstacle for a citizen of ordinary means.  There might be some prospect of bringing such a suit on a contingency basis, but the nature of the tort duty advanced by Ms. Daigle seems something of a gamble.  In any event, Ms. Daigle would likely need to bring her own witnesses to Kentucky, which is a considerable burden for an individual plaintiff to carry.  The convenience concept does, however, bring up an earlier concern associated with subject matter jurisdiction.  Unless and until it is established that Ms. Daigle suffered an employment-related injury of the kind she alleges (sexual harassment/hostile work environment), there is nothing particularly convenient about her attempt to obtain relief from Trover Clinic on the basis of a new tort duty and a causal connection that depends on the intervening acts of independent parties.

18

                iv.       The judicial system's interest in obtaining the most effective resolution of the controversy

In terms of any eventual enforcement of a judgment rendered against Trover Clinic and any future likelihood that litigation will prevent Trover Clinic from skirting the obligations of the HQIA in the future, the most effective forum in which to air this controversy would be Kentucky, because litigation in Kentucky is more likely to have a long-term impact on Trover Clinic's reporting behavior than litigation in Maine. Moreover, as in <u>Awan</u>, any future effort to enforce a judgment would necessarily take Ms. Daigle to Kentucky. As for novel tort theories, there is no greater efficiency in having this Court consider whether existing Maine law favors an imposition of the tort duty that Ms. Daigle espouses, as the parties can brief that issue equally well in proceedings before a Kentucky court.

                v.        The common interest in promoting substantive social policies

I agree with Ms. Daigle that an important component of her case against Trover Clinic involves the social policy of ensuring that healthcare organizations like Trover Clinic comply with the reporting obligations of the HQIA. However, advancement of that social policy, as against Trover Clinic, is best achieved in its home jurisdiction. Consequently, my view is that this factor does not weigh in Ms. Daigle's favor.

    **3.**    ***Venue***

Because my findings and recommendation favor Trover Clinic's position with respect to both subject matter jurisdiction and personal jurisdiction, I refrain from addressing the issue of proper venue.

**D.	CONCLUSION**

For the reasons set forth above, I conclude that the Court would appropriately exercise its discretion by declining to exercise subject matter jurisdiction over Ms. Daigle's claims against Trover Clinic in this case based on the insufficient presentation she makes in relation to the applicable legal standards. In addition, I conclude that the overall balance among the personal jurisdiction tests is tipped in favor of Trover Clinic's position that the Court does not have jurisdiction over the person of this Kentucky-based defendant. Accordingly, I RECOMMEND that the Court GRANT Trover Clinic's Motion to Dismiss (Doc. No. 10).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

			/s/ Margaret J. Kravchuk
			U.S. Magistrate Judge
January 11, 2010