UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TANYA DAIGLE,                         )
                                      )
              Plaintiff,              )
                                      )
      v.                              )        CV-09-353-B-W
                                      )
JAROSLAV P. STULC, et al.,            )
                                      )
              Defendant.              )

**ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE
JUDGE AND DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL
DISCOVERY**

Tanya Daigle, a Maine resident, sued Jaroslav P. Stulc, a medical doctor formerly

licensed to practice medicine in Kentucky and Maine, Redington-Fairview Hospital (Redington-

Fairview), a healthcare facility located in Skowhegan, and Trover Clinic Foundation, Inc.

(Trover), a Kentucky corporation that owns and operates several health care facilities in

Kentucky.   Ms. Daigle's multi-count Complaint alleges violations of state and federal law

against Redington-Fairview and Trover contending that they are liable for the conduct of Dr.

Stulc.   Trover, whose only connection with the state of Maine is that it responded to inquiries

about Dr. Stulc from the Maine Board of Licensure of Medicine (Maine Board of Licensure) and

Redington-Fairview, moved to dismiss the Complaint against it, based on a lack of jurisdiction.

Over Ms. Daigle's objection, the Court affirms the Magistrate Judge's recommendation to

dismiss the Complaint as against Trover.

**I.      STATEMENT OF FACTS**

      **A.      Procedural History**

On October 2, 2009, Trover moved to dismiss the Complaint for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and improper venue. *Def. Trover Clinic Foundation, Inc.'s Mot. to Dismiss with Incorporated Mem. of Law* (Docket # 10) (*Def.'s Mot.*). On October 21, 2009, Ms. Daigle filed her opposition and moved to amend her Complaint. *Pl.'s Opp'n to Def. Trover's Mot. to Dismiss* (Docket # 15) (*Pl.'s Opp'n*); *Mot. to Amend Complaint* (Docket # 14) (*Mot. to Amend*). Trover replied to Ms. Daigle's opposition and motion to amend on October 30, 2009. *Def. Trover Clinic Foundation, Inc.'s Reply Mem. in Support of Mot. to Dismiss* (Docket # 16) (*Def. Reply*); *Def. Trover Clinic Foundation, Inc.'s Objection to Pl.'s Mot. for Leave to File Amended Complaint with Incorporated Mem. of Law* (Docket # 17) (*Def. Ob.*). On November 12, 2009, this Court referred the motion to dismiss to the Magistrate Judge. On November 24, 2009, the Magistrate Judge ordered Ms. Daigle to file supplemental "brief[ings] [to] address the existence of specific personal jurisdiction over Trover." *Mem. of Decision on Mot. to Amend and Order Requiring Supplemental Briefing* at 8 (Docket # 20) (*Mem. of Decision*). The Magistrate Judge instructed Ms. Daigle to "outline the elements of her several tort theories and explain their relationship to Trover Clinic's Maine forum contact." *Id.* at 9. "[A] recommended decision on the motion to dismiss" would be issued "following receipt of the supplemental briefing called for in this order." *Id.* at 2.

As instructed, on December 8, 2009, Ms. Daigle filed a supplemental brief addressing personal jurisdiction. *Pl.'s Mem. of Law and Fact in Support of Personal Jurisdiction Over Def. Trover* (Docket # 24) (*Pl.'s Supp. Br.*). Trover responded on December 21, 2009. *Def. Trover Clinic Foundation, Inc.'s Resp. to Pl.'s Mem. of Law and Fact Regarding Personal Jurisdiction* (Docket #29) (*Def.'s Resp.*). On January 1, 2010, the Magistrate Judge issued her report and recommended decision recommending that the Court dismiss the Complaint against Trover.

2

*Recommended Decision* (Docket # 32) (*Rec. Dec.*).   On January 28, 2010, Ms. Daigle filed her

objection to the Magistrate Judge's Recommended Decision.   *Pl.'s Objection to Recommended*

*Decision on Def. Trover's Mot. to Dismiss and Incorporated Mem. of Law*  (Docket # 34) (*Pl.'s*

*Ob.*).   On the same day, Ms. Daigle filed a motion for jurisdictional discovery.   *Mot. for*

*Jurisdictional Discovery* (Docket # 33) (*Mot. for Jur. Disc.*).   Five days later, Ms. Daigle filed

several attachments in support of her objection to the recommended decision.[1]   Exhibits A, B, C.

(Docket # 35, 36, 37, 38).   On February 16, 2010, Trover responded to Ms. Daigle's objection to

the recommended decision.   *Def. Trover Clinic Foundation, Inc.'s Resp. to Pl.'s Objection to*

*Magistrate Judge's Opinion Recommending Dismissal*  (Docket # 39) (*Def. Resp. to Pl.'s Ob.*).

On February 18, 2010, Trover filed an objection to Ms. Daigle's motion for jurisdictional

discovery.   *Def. Trover Clinic Foundation, Inc.'s Objection to Pl.'s Mot. For Jurisdictional*

*Discovery, with Incorporated Mem. of Law* (Docket # 40) (*Def. Ob. to Pl.'s Mot for Jur. Disc.*).

**B.**      **The Facts**

In 2007, Vickie Plummer, Initial Licensure Specialist for the Maine Board of Licensure,

wrote Trover in Kentucky:

---

[1] The purpose of these later attachments to Ms. Daigle's objection is unclear.  Ms. Daigle attached two exhibits to
her original Complaint.  *Compl.* Attach. 1, 2.  There were no exhibits attached to her Amended Complaint.  *Am.
Compl.* (Docket # 25).  After Trover moved to dismiss, Ms. Daigle filed a memorandum in response and attached an
affidavit from Vickie Plummer, the Initial Licensure Specialist for the Maine Board of Licensure.  *Pl.'s Opp'n*,
Attach. 1.  She filed two attachments to her supplement memorandum.  *Pl.'s Supp. Br.* Attach. 1, 2.  After the
Magistrate Judge issued her Recommended Decision, Ms. Daigle objected on January 28, 2010.  *Pl.'s Ob.*  On
February 1, 2010, she filed four sets of additional attachments, which are docketed as being attachments to her
objection to the Recommended Decision.  *Additional Attach.*  (Docket # 35, 36, 37, 38).
          The late unexplained filing of these attachments is inappropriate.  The Magistrate Judge adopted the *prima
facie* method of establishing jurisdictional facts.  *Rec. Dec.* at 11 (citing *B.J. Tidwell Indus. v. Zawacki*, 645 F. Supp.
2d 7, 10 (D. Me. 2009)).  In doing so, she allowed Ms. Daigle to proffer evidence to support facts essential to
jurisdiction.  *Id.*  Ms. Daigle availed herself of this opportunity and filed the Plummer affidavit, which the
Magistrate Judge duly considered.  *Id.* at 11-12.  Now, objecting to the Recommended Decision, Ms. Daigle seeks to
place before the Court a significant amount of documentary evidence she elected not to place before the Magistrate
Judge.  The Court will not consider this additional evidence and strikes it from the record.  "Parties must take before
the magistrate, not only their best shot, but all of their shots."  *Borden v. Sec'y of Health and Human Servs.*, 836
F.2d 4, 6 (1st Cir. 1987) (internal quotation omitted).

> The Physician named above has applied for licensure to practice medicine in the State of Maine and has indicated affiliation with your institution during the period shown. Would you please verify this information and provide us with your comments concerning this physician's professional ethics, character, and clinical competence. This information needs to be on your original letterhead.
>
> As this doctor's license in Maine is contingent upon a response from your institution, a prompt reply would be appreciated.

Mark Browne, M.D., Trover's Vice President of Medical Affairs, responded from Kentucky:

> The records of Trover Health System reflect that Dr. Stulc was placed on a work improvement plan. An investigation into his conduct was completed. No final adverse action was taken against Dr. Stulc's privileges. After the completion of this investigation, Dr. Stulc voluntarily resigned from the medical staff with privileges in good standing.

Dr. Stulc subsequently became licensed to practice medicine in Maine and began working at Redington-Fairview.

Ms. Daigle worked with Dr. Stulc when they were both employed by Redington-Fairview; she as an office manager and he as a general surgeon. Ms. Daigle alleges that Dr. Stulc created a hostile work environment through verbal abuse and by such conduct as engaging in sexually inappropriate behavior with female patients and viewing pornography. Ms. Daigle alleges that Trover, Dr. Stulc's employer prior to Redington-Fairview, was aware of Dr. Stulc's propensity for sexually inappropriate behavior, but failed to disclose its knowledge to the National Practitioner Data Bank (Data Bank), the Maine Board of Licensure, and to Redington-Fairview, and in doing so violated the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. §§ 11101-11152. Ms. Daigle's amended Complaint as it applies to Trover includes claims of fraudulent concealment, negligence, and hostile work environment.

### C. Motion to Dismiss: The Parties' Positions, the Recommended Decision and the Plaintiff's Objection

4

### 1.  Trover's Position

Trover urges the Court to dismiss the Complaint against it for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and improper venue.  Fed. R. of Civ. P. 12(b)(1), 12(b)(2), 12(b)(3).  *Def.'s Mot*. at 1.  Trover argues that the Court cannot assume subject matter jurisdiction over Ms. Daigle's claims because they do not involve a federal question and there is not complete diversity between the parties.  *Id*. at 2-8.  As for personal jurisdiction, Trover states that "it does not have sufficient minimum jurisdictional contacts with the State of Maine to allow for personal jurisdiction, either general or specific."  *Id*. at 17.  Trover writes:

> [t]he alleged wrongful acts of which Trover Clinic is accused, merely mailing two letters, drafted in and mailed from Kentucky, at the request of two Maine entities for information, are not sufficient to Constitutionally confer long-arm jurisdiction upon the State of Maine over these claims.  Trover Clinic did not, of its own volition, choose to enter into the State of Maine for any purpose, nor did it in any way 'purposefully avail' itself for any activities in Maine whatsoever.

> Even if Trover Clinic's other activities in relation to Dr. Stulc, i.e., investigation of complaints against him and determining what should be done about them, are in any way relevant to Plaintiff's claims, those all took place in Kentucky, and do not in any way constitute a jurisdiction-conferring 'contact' with Maine.  At the time of Trover Clinic's dealing with Dr. Stulc, and his holding privileges to practice medicine at Trover Clinic or Regional Medical Center, Trover Clinic would have had no reason to be able to see into the future and know that Dr. Stulc would even seek employment in Maine, much less commit the acts it is claimed he committed.

*Id*. at 13-14.  Trover's final argument is that even if jurisdiction is proper, pursuant to 28 U.S.C. § 1391, Maine is not the appropriate venue for this action.  *Id*. at 17-20.

### 2.  Daigle's Response

In her initial response, Ms. Daigle contended that Trover's "deliberate and flagrant violation of the [HCQIA] belies Defendant's argument in ways, and to a degree, beyond dispute."  *Pl.'s Opp'n* at 1.  Ms. Daigle then proceeded to the merits by pointing out the bases for her contention that Dr. Stulc had an extensive history of sexual harassment when he worked for

Trover, and that Trover had failed to report adverse actions against Dr. Stulc to the Data Bank. *Id.* at 3-9. Ms. Daigle also moved to amend her complaint to assert that Trover violated its Data Bank reporting obligations under HCQIA. *Mot. to Amend*.

After the Magistrate Judge ordered her to supplement her memorandum to address the tests for specific jurisdiction, Ms. Daigle argued that by failing to report Dr. Stulc's activities to the Data Bank and by sending a less than forthcoming letter to the Maine Board of Licensure, Trover committed the tort of fraudulent concealment and became subject to jurisdiction in Maine, since it caused the consequences of its tortious act to occur in Maine. *Pl.'s Supp. Br.* at 3-4. Ms. Daigle asserted that Trover's letter to the Maine Board of Licensure was sufficient to meet the "relatedness" and "purposeful availment" requirements. *Id.* at 5-12. Finally, it analyzed the so-called "gestalt factors" as strongly favoring federal court jurisdiction in Maine. *Id.* at 13-14.

### 3.    The Recommended Decision

In her recommended decision, the Magistrate Judge concluded

> that the Court has discretion to exercise pendant party jurisdiction over the claims against Trover, so that the subject matter jurisdiction argument does not necessarily mandate dismissal. However, Ms. Daigle has failed to assert a valid basis for subject matter jurisdiction in her memoranda and therefore has waived the issue.

*Rec. Dec.* at 2. The Magistrate Judge further stated that "Ms. Daigle fails to establish the existence of in personam jurisdiction over Trover Clinic based on the contacts and tort theories at issue in this case." *Id.* Because these findings and recommendations favor Trover, the Magistrate Judge refrained from addressing venue. *Id.* at 19.

### 4.    Tanya Daigle's Objection

6

Ms. Daigle objects to the Recommended Decision on four grounds:  1) she claims that Supreme Court precedent, specifically *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) and *Calder v. Jones*, 465 U.S. 783 (1984), supports the Court's assertion of jurisdiction; 2) she asserts that, contrary to the Magistrate Judge's recommendation, the HCQIA provides a basis for jurisdiction, 3) she says that *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009) favors a finding of jurisdiction; and, 4) she contends that jurisdiction is conferred under Federal Rule of Civil Procedure 4(k)(2).

## II.      DISCUSSION

None of Ms. Daigle's arguments justifies a decision different than the one recommended by the Magistrate Judge.

### A.      Supreme Court Precedent

Ms. Daigle cites two Supreme Court cases:  *Keeton* and *Calder*.  Ms. Daigle's reliance on *Keeton* is strained.  In *Keeton*, the Supreme Court addressed whether Hustler Magazine's sale of some 10,000 to 15,000 copies each month in the state of New Hampshire was sufficient to establish minimum contacts with the state, and the Court concluded that "[w]here, as in this case, respondent Hustler Magazine, Inc., has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Keeton*, 465 U.S. at 772, 781.  Here, the sum total of Trover's involvement in the state of Maine is that it responded to two inquiries about a former physician-employee.   Unlike Hustler's substantial monthly entry into the New Hampshire market, Trover's contacts with Maine are properly characterized as "random, isolated, [and] fortuitous." *Id.* at 774.

Ms. Daigle fares no better under *Calder.* In *Calder*, a California resident brought suit in the state of California against the National Enquirer, Inc., a Florida corporation with a principal place of business in Florida. 465 U.S. at 809. The National Enquirer sold about 600,000 copies of its weekly newspaper in the state of California. *Id.* The plaintiff alleged that the defendants, including not only the National Enquirer itself, but also a reporter and editor, published a defamatory article about her that "they knew would have a potentially devastating impact upon [her]." *Id.* at 790. The contrast between the facts in *Calder* and Ms. Daigle's case is apparent. Trover did not have ongoing regular contact with the state of Maine, and in performing its duty to respond to inquiries from the Maine Board of Licensure, Trover had no reason to conclude that it was subjecting itself to jurisdiction within the state of Maine.

On their facts, *Keeton* and *Calder* are readily distinguishable from the two written responses Trover sent to the state of Maine, and do not authorize the Court's exercise of jurisdiction on these facts.

### B.     HCQIA

Ms. Daigle's claim that a claimed violation of the HCQIA is sufficient to establish federal jurisdiction is plainly wrong. Under 42 U.S.C. § 11111(1)(D), the statute makes it clear that a person who participates in the Data Bank "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action." In *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, the First Circuit wrote that "[i]n order to encourage the type of peer review that would expose incompetent physicians, the HCQIA shields health care entities . . . from liability for damages for actions performed in the course of monitoring the competence of health care personnel." 308 F.3d 25, 31 (1st Cir. 2002); *see Doe v. Leavitt*, 552 F.3d 75 (1st Cir. 2009) (addressing a hospital report to the Data Bank). There is

no authority for the proposition that HCQIA creates an independent private cause of action for individuals who claim they were injured as a consequence of a Data Bank report filed in compliance with the HCQIA.  Congress enacted the HCQIA to require entities - like Trover - to report the results of their investigations of professional misconduct allegations against physicians - like Dr. Stulc.  *Doe*, 552 F.3d at 83 (stating that the congressional purpose underlying HCQIA was to "improve the quality of health care by encouraging hospitals to identify and discipline practitioners who engage in unprofessional behavior").  The immunity provisions of the law confirm that Congress did not intend the HCQIA to be a general grant of federal court jurisdiction for individuals, who claim they were damaged by those physicians.

### C.      *Astro-Med, Inc. v. Nihon Kohden*

Contrary to Ms. Daigle's contention, *Astro-Med* does not support the Court's assertion of jurisdiction.  Ms. Daigle contends that under *Astro-Med*, it "is the <u>knowledge</u> of a defendant, gained by that defendant <u>before</u> that defendant's tortious conduct, that leads to a finding of relatedness, purposeful availment, and reasonableness which together form the elements of personal, specific jurisdiction."  *Pl.'s Ob.* at 1-2.  It is true that in its relatedness analysis in *Astro-Med* the First Circuit highlighted the fact that before it hired away the Plaintiff's salesperson, the Defendant business knew that it was "running the risk that [the employee] would thereby have breached his Rhode Island contract with a Rhode Island company and any ensuing suit would be initiated in Rhode Island and interpreted under Rhode Island law."  *Astro-Med*, 591 F.3d at 10.  But, the dissimilarity between the Defendant in *Astro-Med* and Trover is striking.  Here, Trover merely responded in writing to requests for information from the Maine Board of Licensure and a Maine hospital; Trover had no reason to believe that by doing so, it would later be haled into federal court in the state of Maine.

### D.     Rule 4(k)(2)

Ms. Daigle's argument under Rule 4(k)(2) is unavailing.  First, the Court is aware of no authority that Rule 4, which details the procedural rules for service of process, constitutes an affirmative grant of federal court jurisdiction.  Second, to fit within Rule 4(k)(2), there must be a claim "that arises out of federal law," Fed. R. Civ. P. 4(k)(2), and here, Ms. Daigle has no claim that arises out of federal law.  Thus, by its terms, Rule 4(k)(2) does not apply.  Absent a right to serve process under federal law, the "Federal Rules of Civil Procedure provide that [the plaintiff] must demonstrate that [the defendant] was served in a manner consistent with [the state's] long arm statute." *ICP Solar Techs. v. TAB Consulting, Inc.*, 413 F. Supp. 2d 12, 15 (D.N.H. 2006).  As described in *ICP*, the analysis predictably traces back to whether there is jurisdiction over the defendant in the first place.  Finally, Ms. Daigle might decide to sue Trover in the state of Kentucky, and if so, Trover would be subject to a court of general jurisdiction there.  *See* Fed. R. Civ. P. 4(k)(2)(A).

### E.     Summary

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision.   For the reasons set forth in the Magistrate Judge's Recommended Decision and for the additional reasons in this decision, the Court adopts the Magistrate Judge's Recommended Decision and grants Trover's motion to dismiss.

The Court denies Ms. Daigle's motion for jurisdictional discovery.  The Magistrate Judge previously ruled against the same request, but Ms. Daigle failed to object and she has waived the right to do so now.  *See* Fed. R. Civ. R. 72.1; D. Me. Loc. R. 72.1.  Further, having reviewed Ms. Daigle's proposed discovery, the Court concludes, as did the Magistrate Judge, that she has

failed to make "a colorable case in support of this Court's exercise of jurisdictional discovery."

*Tom's of Maine v. Acme-Hardesty Co.*, 247 F.R.D. 235, 239 (D. Me. 2008); *United States v. Swiss Am. Bank*, 274 F.3d 610, 626-27 (1st Cir. 2001).

For the reasons set forth in footnote 1, the Court strikes the documents contained in Tanya Daigle's additional attachments (Docket # 35 - 38).

## III.   CONCLUSION

1) The Court <u>ORDERS</u> that the Recommended Decision of the Magistrate Judge (Docket # 32) is hereby <u>AFFIRMED</u>;

2) The Court further <u>ORDERS</u> that Defendant Trover's Motion to Dismiss (Docket # 10) is <u>GRANTED</u> and Plaintiff's Amended Complaint against Trover be and hereby is <u>DISMISSED</u>;

3) The Court further <u>ORDERS</u> that Plaintiff's Motion for Jurisdictional Discovery (Docket # 33) is <u>DENIED</u>;  and,

4) The Court finally <u>ORDERS</u> that the documents contained in the Additional Attachments, Docket # 35, 36, 37, and 38 are <u>STRUCK</u> from the docket.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2010

11